GREGORY J. NEWMAN (SBN 169057)
gnewman@selmanbreitman.com
HEE SUNG YOON (SBN 251612)
hyoon@selmanbreitman.com
SELMAN BREITMAN LLP
11766 Wilshire Blvd., Sixth Floor
Los Angeles, CA 90025-6538
Telephone: 310.445.0800
Facsimile: 310.473.2525

Attorneys for Defendant
ARCH SPECIALTY INSURANCE COMPANY

# UNITED STATE DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG MCCRACKEN, an individual and LAUREN FAUST, an individual,, <br><br> Plaintiff, <br><br> v. <br><br> ARCH SPECIALTY INSURANCE COMPANY, a Nebraska corporation; UNITED SPECIALTY INSURANCE COMPANY, a Delaware corporation; and DOES 1 through 100, inclusive,, <br><br> Defendant. | Case No. 2:14-cv-03088-ODW-SH <br><br> Judge: Hon. Otis D. Wright, II <br><br> **DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MOTION TO DISMISS** <br><br> Date: June 2, 2014 <br> Time: 1:30 p.m. <br> Courtroom: 11 <br><br> Removed: April 22, 2014 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 2, 2014 at 1:30 p.m., in Courtroom 11 of the above entitled court, located at 312 North Spring Street, Los Angeles, CA 90012, Defendant ARCH SPECIALTY INSURANCE COMPANY ("Arch") will, and hereby does, move the Court to dismiss the First Amended Complaint ("FAC") against it in its entirety. This motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs have failed to state a claim for relief since the facts alleged in the FAC, taken together with the terms of the policy issued by Arch as alleged in the FAC, demonstrate that Arch had no duty to defend or indemnify Plaintiffs' assignee, Hess Roofing & Construction, Inc.

1

1   This motion to dismiss is based on this notice of motion, the memorandum
2  of points and authorities, the accompanying Request for Judicial Notice, the
3  pleadings and papers filed in this action thus far, and on any and all further
4  evidence that may be presented at or before the hearing on this motion.

6  DATED: April 28, 2014                SELMAN BREITMAN LLP

                                        By: /S/ GREGORY J. NEWMAN
                                            GREGORY J. NEWMAN
                                            HEE SUNG YOON
                                            Attorneys for Defendant
                                            ARCH SPECIALTY INSURANCE
                                            COMPANY

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................2

    A. Allegations in the First Amended Complaint ...........................................2

    B. The Arch Policy ........................................................................................2

III. STANDARDS FOR RULING ON THIS MOTION TO DISMISS ....................5

    A. Federal Procedural Standards Apply .........................................................5

    B. California Substantive Law Applies .........................................................6

IV. PLAINTIFFS' FIRST AMENDED COMPLAINT ALLEGES FACTS PROVING THAT NO COVERAGE EXISTS UNDER THE ARCH POLICY AS A MATTER OF LAW ................................................7

    A. The First Amended Complaint Only Alleges Property Damage That Occurred *After* the Arch Policy Expired .........................7

    B. Exclusions J(5) and J(6) Preclude Coverage For Any Property Damage That May Have Occurred While Hess Was Performing Work on Plaintiffs' Home, Though No Such Property Damage Was Alleged ............................................................8

    C. Arch Cannot Be Liable for Breach of the Implied Covenant As A Matter of Law ........................................................................9

V. THE COURT SHOULD GRANT ARCH'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND ........................................................9

VI. CONCLUSION ...................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Albrecht v. Lund*
    845 F.2d 193 (9th Cir. 1988) ............................................................................ 9

*Ashcroft v. Iqbal*
    556 U.S. 662, 129 S.Ct. 1937 (2009) ................................................................ 5

*Centennial Ins. Co. v. Ryder Truck Rental, Inc.*
    149 F.3d 378 (5th Cir. 1998) ............................................................................ 6

*Chalk v. T-Mobile USA, Inc.*
    560 F.3d 1087 (9th Cir. 2009) .......................................................................... 6

*Erie Railroad Co. v. Tompkins*
    304 U.S. 64, 58 S.Ct. 817 (1938) ...................................................................... 6

*Gasperini v. Center for Humanities, Inc.*
    518 U.S. 415, 116 S.Ct. 2211 (1996) ................................................................ 6

*Huynh v. Chase Manhattan Bank*
    465 F.3d 992 (9th Cir. 2011) ............................................................................ 5

*J & J Pumps, Inc. v. Star Ins. Co.*
    795 F.Supp.2d 1023 (E.D. Cal. 2011) .............................................................. 6

*Pension Benefit Guar. Corp. v. White Consolidated Indus., Inc.*
    998 F.2d 1192 (3rd Cir. 1993) .......................................................................... 5

*Reddy v. Litton Industries, Inc.*
    912 F.2d 291 (9th Cir. 1990) ....................................................................... 9-10

*State of New York v. Blank*
    27 F.3d 783 (2nd Cir. 1994) .............................................................................. 6

*Ticknor v. Choice Hotels Intern., Inc.*
    265 F.3d 931 (9th Cir. 2001) ............................................................................ 6

*United States v. Corinthian Colleges*
    655 F.3d 984 (9th Cir. 2011) ............................................................................ 5

*Van Winkle v. Allstate Ins. Co.*
    290 F.Supp.2d 1158 (C.D. Cal. 2003) .............................................................. 6

**State Cases**

*Baroco West, Inc. v. Scottsdale Ins. Co.*
  110 Cal.App.4th 96 (2002) .................................................................................. 8

*Clarendon America Ins. Co. v. General Security Indem. Co.*
  193 Cal.App.4th 1311 (2011) ........................................................................... 8-9

*Hallmark Ins v. Sup. Ct.*
  201 Cal.App.3d 1014 (1988) ............................................................................. 7

*Waller v. Truck Ins. Exchange, Inc.*
  11 Cal.4th 1 (1995) ............................................................................................ 9

*Whittaker Corp. v. Allianz Underwriters, Inc.*
  11 Cal.App.4th 1236 (1992) .............................................................................. 7

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 5

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 5

iii

## I. INTRODUCTION[1]

In 2007, Plaintiffs retained Hess Roofing & Construction, Inc. dba Starlight Construction ("Hess") to replace the roof over parts of their home and install a waterproofing system on their patio deck. Plaintiffs allege that Hess continued working on their home though March 2010. Plaintiffs also allege that their home suffered damage from water intrusion in January 2010. In September 2012, Plaintiffs filed suit against Hess alleging that its work was defective (the "Underlying Action"). Hess allegedly tendered the defense of the Underlying Action to Arch Specialty Insurance Company ("Arch"), who insured Hess under policy number 39CGL04054-00, effective June 5, 2009 to September 22, 2009 (the "Arch Policy"). Plaintiffs thereafter obtained a default judgment against Hess and subsequently received an assignment of Hess's rights under its insurance policies. Plaintiffs then filed the instant action against Arch.

The Arch Policy, like most commercial general liability policies, provides coverage for claims arising out of property damage that occurs *during* the policy period. Here, the property damage alleged by Plaintiffs admittedly occurred *after* the Arch Policy expired. As such, coverage is not triggered under the Arch Policy. Further, the Arch Policy, like most commercial general liability policies, contains exclusions j(5) and j(6), which preclude coverage for damage to property upon which the insured is working. Because Plaintiffs allege that Hess was working on their home from 2007 to 2010, this necessarily encompasses the entirety of the Arch Policy (2009). As such, no coverage would exist for any property damage that may have occurred during the Arch Policy period as a matter of law, *though none is alleged*. Based on the foregoing, Arch had no obligation to defend or indemnify Hess for the Underlying Action and, as a result, has no such obligations

---

[1] All factual assertions are taken directly from Plaintiffs' First Amended Complaint, filed in the California Superior Court on January 16, 2014. Plaintiffs' original complaint, filed on December 9, 2013, did not name and was never served on Arch.

1

MOTION TO DISMISS
CASE NO. 2:14-cv-03088-ODW-SH

to Plaintiffs. Without a coverage obligation, there is no basis to support a claim for breach of the implied covenant of good faith and fair dealing. Therefore, this Court should grant Arch's Motion to Dismiss, without leave to amend.

## II. FACTUAL BACKGROUND

### A. Allegations in the First Amended Complaint

Plaintiffs Craig McCracken and Lauren Faust are husband and wife and the owners of real property located at 7270 Mulholland Drive, Los Angeles, California (the "Property"). First Amended Complaint ("FAC") ¶1. On or about May 2007, Plaintiffs and Hess entered into a written contract whereby Hess agreed to replace the built-up roof around the master bedroom and the installation of a waterproofing deck. FAC ¶10. Hess performed the work until about March 2010, at which time Hess abandoned the job. *Id.*

On or about January 2010, the Property was severely damaged by water intrusion through the windows, doors, walls and roofs. FAC ¶11. Plaintiffs notified Hess to make repairs, which Hess refused to do. FAC ¶ 12. Plaintiffs were forced to hire other contractors and engineers to repair the water damage. *Id.*

In September 2012, Plaintiffs filed a complaint in the Los Angeles Superior Court, alleging causes of action for negligence, negligence per se, breach of contract, breach of express warranties, and breach of third party beneficiary contract against Hess and its license bonding company. FAC ¶14. Plaintiffs obtained a default judgment against Hess. FAC 22. Hess assigned its rights against its insurers to Plaintiffs. FAC ¶20. The FAC alleges two causes of action for breach of contract and breach of the implied covenant of good faith.

### B. The Arch Policy

Arch issued to Hess commercial general liability policy number 39CGL04054-00, effective June 5, 2009 to September 22, 2009 (the "Arch Policy"). FAC ¶ 2. A certified copy of the Arch Policy is attached hereto as Exhibit A. As discussed below, the Court can consider the terms of the Arch Policy.

The insuring agreement of the Arch Policy states, in pertinent part:

1. INSURING AGREEMENT

   a. We will pay those sums that an insured becomes legally obligated to pay as tort damages for bodily injury or property damage to which this insurance applies. We have the right and duty to defend the insured against any suit seeking tort damages provided that no other insurance affording a defense against such a suit is available to the insured. Our duty to defend the insured is further limited as provided below or in the Section of the policy entitled "EXCLUSIONS: COVERAGES A AND B." We will have no duty to defend any insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply. We may at our discretion investigate any occurrence and settle any claim or suit that may result....

   b. This insurance applies to bodily injury and property damage only if:

      (1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and

      (2) The bodily injury or property damage is caused by an occurrence which takes place during the policy period whether or not such occurrence is known to any insured; and

      (3) The bodily injury or property damage resulting from such occurrence first takes place during the policy period. (See Ex. A at p. A-6.)

The Arch Policy contains exclusions that state the insurance does not apply to:

J. DAMAGE TO PROPERTY EXCLUSION

Property damage to:

...

3

MOTION TO DISMISS
CASE NO. 2:14-cv-03088-ODW-SH

(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or

(6)  That particular part of any property that must be restored, repaired, or replaced because your work was incorrectly performed on it.

...

Paragraph (6) of this Exclusion does not apply to property damage included in the products-completed operations hazard. (Ex. A at p. A-9 – A-10.)

The Arch Policy defines "products-completed operations hazard" as:

17.  PRODUCTS-COMPLETED OPERATIONS HAZARD

Products-Completed operations hazard:

a.  includes all bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work except:

(1)  Products that are still in your physical possession; or

(2)  Work that has not yet been completed.

b.  Your work will be deemed completed at the earliest of the following times:

(1)  When all of the work called for in your contract has been completed.

(2)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

4

> Work that may need service, maintenance, correction, repair or replacement, after it is complete as set forth in paragraph b. above, will be treated as completed even though a contract requires such service, maintenance, correction, repair or replacement. (Ex. A at p. 21.)

## III. STANDARDS FOR RULING ON THIS MOTION TO DISMISS

### A. Federal Procedural Standards Apply

Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A court may dismiss an action for failure to state a claim upon which relief may be granted. *Id.* at 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). A motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in plaintiff's favor, nonetheless shows that an affirmative defense is apparent on the face of the complaint. See *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2011) [motion to dismiss was properly granted where the allegations showed that the claim was barred by the statute of limitations].

Further, the court can consider the Arch Policy in ruling on this motion to dismiss, since documents that are not physically attached to the complaint may be considered by the court if the complaint refers to such document, the document is central to plaintiff's claims and no party questions the authenticity of the document. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993). Indeed, in cases where a plaintiff seeks benefits under an

insurance policy, the courts routinely consider the terms and provisions of an insurance policy in ruling on a motion to dismiss, even though the policy was not attached to the complaint. E.g., *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, fn. 2 (C.D. Cal. 2003); *J & J Pumps, Inc. v. Star Ins. Co.*, 795 F.Supp. 2d 1023, 1027 (E.D. Cal. 2011). As such, the Court can consider the certified copy of the Arch Policy referenced in the FAC (at ¶ 2), which is central to Plaintiffs' claims against Arch.

### B.   California Substantive Law Applies

Federal courts exercising diversity jurisdiction must apply the substantive state law of the state in which they are located, except on matters governed by the U.S. Constitution or federal statutes. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219 (1996). As the interpretation of contracts is considered "substantive," the federal courts must apply state rules. *State of New York v. Blank*, 27 F.3d 783, 788 (2nd Cir. 1994). As such, federal courts in diversity cases must apply the state rules for interpretation of insurance policies. *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 381 (5th Cir. 1998).

When undertaking this task, a federal court sitting in diversity is to approximate state law as closely as possible. In doing so, federal courts are bound by the pronouncements of the state's highest courts on applicable state law. *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). When the state's highest court has not decided an issue, the task of the federal courts is to predict how a state high court would resolve it. *Id.* If there is relevant authority from the state's intermediate appellate court, the federal court must follow the state's intermediate appellate court, unless the federal court finds convincing evidence that the state's highest court would not follow it. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009).

Without question, California law governs the interpretation of the Arch

Policies. As such, this court must look to relevant California authority when interpreting the provisions of the Arch Policies, including pronouncements of the California Courts of Appeals that have interpreted similar provisions.

## IV. PLAINTIFFS' FIRST AMENDED COMPLAINT ALLEGES FACTS PROVING THAT NO COVERAGE EXISTS UNDER THE ARCH POLICY AS A MATTER OF LAW

### A. The First Amended Complaint Only Alleges Property Damage That Occurred *After* the Arch Policy Expired

The Arch Policy only provides coverage for bodily injury or property damage is caused by an occurrence that takes place during the policy period. Ex. A at p. A-6, Insuring Agreement ¶b(2). Under California law, it is well settled that the time of occurrence of an accident is the time when the complaining party was actually damaged, not the time the wrongful act was committed. *Hallmark Ins. v. Sup. Ct.*, 201 Cal.App.3d 1014, 1017 (1988). The time of occurrence of an accident refers to the event causing the actual injury, and not an earlier event which caused the potential for future injury. *Id.* at 1018. Here, the policy ended on September 22, 2009 and the "property damage" did not occur until January 2010. As such, the requirement for coverage to exist under ¶b(2) is not satisfied.

Further, the Arch Policy only provides coverage for bodily injury or property damage that first takes place during the policy period. Ex. A at p. A-6, Insuring Agreement ¶b(3). Again, the only "property damage" alleged in the FAC is alleged to have occurred in January 2010 (FAC ¶ 11), which is after the Arch Policy expired. FAC ¶ 2. Indeed, the Policy was cancelled on September 22, 2009. Ex. A, p. A-37. As such, the requirement for coverage to exist under ¶b(3) is not satisfied. See *Whittaker Corp. v. Allianz Underwriters, Inc.*, 11 Cal.App.4th 1236, 1243 (1992) [a policy is triggered when the time of the injury is within the effective dates of the policy].

Based on the foregoing, there is no possibility of coverage under the Arch

Policy as a matter of law. As such, Arch had no obligation to defend or indemnify Hess for the Underlying Action and, as a result, no such obligations to Plaintiffs.

### B. Exclusions J(5) and J(6) Preclude Coverage For Any Property Damage That May Have Occurred While Hess Was Performing Work on Plaintiffs' Home, Though No Such Property Damage Was Alleged

The Arch Policy also contains exclusion j(5), which precludes coverage for "property damage" to that particular part of real property upon which the named insured is performing operations, if the property damage arises out of those operations. Ex. A at p. A-9 – A-10. Further, exclusion j(6) precludes coverage for the repair or replacement of that particular part of any property upon which the named insured performed work, to the extent that the "property damage" was the result of the named insured's faulty workmanship on that part of the work, and, to the extent that said "property damage" is not included in the "products-completed operations hazard." *Id.* In *Baroco West, Inc. v. Scottsdale Ins. Co.*, 110 Cal.App.4th 96 (2003), a general contractor began construction work during the policy period but did not complete his work until after the policy expired. The court held that the policy did not provide coverage since exclusions j(5) and j(6) precluded coverage for any property damage caused during ongoing construction activities. *Id.* at 103-104.

The applicability of exclusions j(5) and j(6) was reinforced in *Clarendon America Ins. Co. v. General Sec. Indem. Co. of Arizona*, 193 Cal.App.4th 1311 (2011). In this regard, the court stated, at 1325-1326:

> The exclusion found in j(5) applies to work in progress. The insurer is not obligated to indemnify a policyholder for property damage that occurs while the insured is performing operations on that property. Thus, if the [Claimants'] claims encompassed property damage that occurred while [the insured] or its subcontractors were performing operations on the property, no coverage would exist.

> The exclusion found in j(6) excludes coverage for the physical injury to, or loss of use of, that part of the property that must be replaced because [the insured's] work was performed incorrectly. This precludes coverage for the claims asserted by the [Claimants] against [the insured], which were based on alleged "defects and deficiencies" in the residence resulting from poor workmanship and/or materials.

Here, the FAC alleges that Hess began its work on Plaintiffs' home in 2007 (FAC ¶10) and "continued to work at the Real Property through March 2010, including work that caused water damage on or about January 2010." FAC ¶17. Since the Plaintiffs allege that Hess did not complete its work as of March 2010, this necessarily means Hess was performing operations at Plaintiffs' home during the pendency of the Arch Policy, from June 5, 2009 to September 22, 2009. As such, exclusions j(5) and j(6) would preclude coverage for any property damage that may have occurred while Hess was working on Plaintiffs' home, though none was alleged.

### C. Arch Cannot Be Liable for Breach of the Implied Covenant As A Matter of Law

As stated by the California Supreme Court, "if there is no potential for coverage, and hence no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing." *Waller v. Truck Ins. Exch. Inc.*, 11 Cal.4th 1, 35 (1995). Since there was no possibility of coverage under the Arch Policy for the Underlying Action, Arch cannot be liable for breach of the implied covenant of good faith and fair dealing.

## V. THE COURT SHOULD GRANT ARCH'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND

If a complaint is dismissed for failure to state a claim, leave to amend may be denied if amendment would be futile. *Albrecht v. Lund*, 845 F.2d 193, 195-196 (9th Cir. 1988). In determining whether amendment would be futile, a court should examine whether the complaint can be amended to cure the defect "without

9

contradicting any of the allegations of the [operative] complaint." *Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 296-297. While leave to amend is often liberally granted, the amended complaint can only allege other facts that are *consistent* with those in the challenged pleading. *Id.* Here, Plaintiffs cannot cure the defects in its FAC without contradicting the allegations regarding when the property damage occurred, when Hess completed its work or the effective period of the Arch Policy. As such, this Court should grant this motion to dismiss without leave to amend.

## VI. CONCLUSION

As demonstrated above, Plaintiffs' allege the very facts that preclude coverage for the Underlying Action under the Arch Policy as a matter of law. That the damages occurred after the Arch Policy expired is alone enough for the Court to grant the motion to dismiss. However, Plaintiffs also alleged that Hess was working on their home during the entirety of the Arch Policy period, and the Arch Policy precludes coverage for any damage that occurs while Hess was working on their home (again, though no such property damage was alleged). As such, Arch had no duty to defend or indemnify Hess the Underlying Action and, as a result, cannot be liable for breach of the implied covenant of good faith as a matter of law. Therefore, Plaintiffs, as assignees of Hess, are not entitled to any relief under the Arch Policy.

Based on the foregoing, Arch respectfully requests that this Court grant its motion to dismiss without leave to amend, since no amendment can bring Plaintiffs' claim within the coverage of the Arch Policy.

DATED: April 28, 2014             SELMAN BREITMAN LLP

By: */S/ GREGORY J. NEWMAN*
GREGORY J. NEWMAN
HEE SUNG YOON
Attorneys For Defendant
ARCH SPECIALTY INSURANCE COMPANY