O

# United States District Court
# Central District of California

| | |
|---|---|
| CRAIG MCCRACKEN and LAUREN FAUST,<br><br>              Plaintiffs,<br><br>    v.<br><br>ARCH SPECIALTY INSURANCE COMPANY, UNITED SPECIALTY INSURANCE COMPANY, and DOES 1 through 100, inclusive,<br><br>              Defendants. | Case No. 2:14-cv-03088-ODW(SHx)<br><br>**ORDER DENYING DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MOTION TO DISMISS [12]** |

## I. INTRODUCTION

Plaintiffs Craig McCracken and Lauren Faust hired Hess Roofing & Construction, Inc. to make repairs and improvements to their home. Hess was negligent in its construction, and damage resulted to the Plaintiffs' home. Hess's insurers—the Defendants in this action—refused to defend Hess in the Plaintiffs' underlying negligence suit. Ultimately, Hess assigned its rights against its insurers to Plaintiffs, who brought this suit against the Defendants. Arch Specialty Insurance Company—one of Hess's insurers—now moves to dismiss Plaintiffs' First Amended

///

Complaint ("FAC"). For the reasons discussed below, the Court **DENIES** the Defendant's Motion to Dismiss.[1] (ECF No. 12.)

## II. FACTUAL BACKGROUND

Plaintiffs own the real property located at 7270 Mulholland Drive, Los Angeles, California ("the Property"). (FAC ¶ 1.) In May 2007, Plaintiffs entered into a written contract with Hess: Hess agreed to replace the master bedroom's built-up roof and install a waterproofing system on the patio deck. (*Id.* ¶ 10.) Hess performed the improvement work until March 2010, when Hess abandoned the job. (*Id.*)

In January 2010, the Property was severely damaged by water intrusion through the windows, doors, walls, and roof. (*Id.* ¶ 11.) The Plaintiffs notified Hess of the water damage and demanded that Hess repair the Property. (*Id.* ¶ 12.) Hess failed to make the repairs, so Plaintiffs were forced to hire other contractors and engineers to repair the damage. (*Id.*)

In September 2012, Plaintiff filed suit against Hess in Los Angeles County Superior Court alleging negligence, breach of contract, breach of express warranty, and breach of a third-party-beneficiary-contract against Hess and its license bonding company. (*Id.* ¶ 14.) Plaintiffs obtained a default judgment in the amount of $209,546.32 against Hess in the underlying action. (*Id.* ¶ 22.) As a part of a compromise between Hess and Plaintiffs, Hess assigned its rights against its insurers to Plaintiffs. (*Id.* ¶ 20.)

Defendant Arch is a Nebraska corporation that sells and distributes insurance in California. (*Id.* ¶ 2.) Plaintiffs allege that Arch insured Hess under commercial-general-liability insurance policy number 39CGL04054-00 (the "Arch Policy"). (*Id.* ¶ 2.) The policy was effective from June 5, 2009 to September 22, 2009. (FAC ¶ 2.)

Defendant United Specialty Insurance Company is a Delaware corporation that sells and distributes insurance in California. (*Id.* ¶ 3.) Plaintiffs allege that United

---

[1] After carefully considering the papers filed in support of and in opposition to Arch's motion to dismiss, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

insured Hess under commercial-general-liability insurance policy number FEC61000859 (the "United Policy"). (FAC ¶ 3.) The policy was effective from September 22, 2009 to September 22, 2010. (*Id.*)

Plaintiffs allege that in October 2012, Midland Claims Administrations, on behalf of United, refused to defend and indemnify Hess against Plaintiffs' claims. (*Id.* ¶ 16.) Plaintiffs contend that Midland incorrectly refused to defend and indemnify Hess based on the policy's prior-completed-work exclusion. (*Id.*) Midland asserted that the United Policy excluded coverage for Hess's work that was completed prior to the inception date of the policy—in this case September 22, 2009. (*Id.*)

Plaintiffs allege that in November 2012, Midland undertook an investigation of the Plaintiffs' claims against Hess on behalf of Arch. (*Id.* ¶ 15) Plaintiffs contend that Arch never accepted or rejected the tender of defense by Hess. (*Id.*)

Plaintiffs assert that in February 2013, they furnished Midland with copies of the Hess account history, emails, and invoices that established that Hess continued to work at the Property through March 2010. (*Id.* ¶ 17.) Plaintiffs allege that despite this production, Arch and United refused to defend Hess in the Plaintiffs' underlying action against Hess in breach of the express and implied terms of the policies— including their duty to defend if there is any potential for coverage. (*Id.* ¶ 18.)

Plaintiffs, as assignees of Hess, filed suit against Defendants alleging breach of (1) the duty to defend and (2) the implied covenant of good faith. (ECF No. 1, Ex. A.) On April 22, 2014, Defendants removed the action to this Court on diversity grounds. (ECF No. 1.) On April 28, 2014, Arch moved to dismiss Plaintiffs' Complaint. (ECF No. 12.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading

requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

Arch moves to dismiss Plaintiffs' FAC because it cannot be liable for breach of its duty to defend—and consequently breach of the implied covenant of good faith—as a matter of law. Arch contends that the facts alleged in the FAC clearly preclude coverage under the Arch Policy. Plaintiffs disagree. For the following reasons the Court **DENIES** Arch's Motion to Dismiss.

/ / /

/ / /

**A. Judicial Notice**

At the outset, Arch requests that the Court take judicial notice of Arch Policy. (ECF No. 12, Ex. A.) Plaintiffs do not oppose this request. Plaintiffs in turn request that the Court take judicial notice of the Complaint filed in the underlying action *McCracken, et al. v. Hess Roofing and Constr. Inc., et al*, Case No. BC492400 ("the underlying complaint"). (ECF No. 20, Ex. 1.) Arch does not oppose this request.

Generally, a court may not consider any other materials beyond the pleadings when deciding a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Consideration of extrinsic evidence converts a 12(b)(6) motion to a summary-judgment motion. Fed. R. civ. P. 12(b)(6). But there are two exceptions to this rule.

First, under Federal Rule of Evidence 201, a court may take judicial notice of matters of public record as long as the noticed facts are not "subject to reasonable dispute." *Lee,* 250 F.3d at 689 (quoting *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986)); Fed. R. Evid. 201.

Second, a court is permitted to consider "material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 688 (internal quotations marks omitted). Materials that are not attached to the complaint, but on which the complaint necessarily relies, may be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011); *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006). Second, a court may take judicial notice of matters of public record that are not subject to reasonable dispute. Fed. R. Evid. 201; *Corinthian Colls.*, 655 F.3d at 999.

The underlying complaint is a matter of public record and not subject to reasonable dispute. Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct

relation to the matters at issue. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 991 n. 8 (9th Cir. 2012). Accordingly, the Court takes judicial notice of the underlying complaint.

Plaintiffs' claims necessarily depend on the provisions of the Arch Policy, which is repeatedly referred to in the Complaint. (Compl. ¶¶ 2, 18–19, 26–27.) Additionally, with regard to the Arch Policy, Arch attached the document to its Motion to Dismiss, and Plaintiffs do not dispute the authenticity of the document. (ECF No. 12, Ex. A.) Accordingly, the Court takes judicial notice of the Arch Policy documents and assumes that they are true for purposes of the motions to dismiss. *See Corinthian Colls.*, 655 F.3d at 999.

**B. Duty to Defend**

Under California law, an insurer's duty to defend against litigation brought against the insured by a third party arises whenever the insurer ascertains facts that give rise to even the potential for indemnity under the policy. *Scottsdale Ins. Co. v. MV Transp.,* 36 Cal. 4th 643, 654 (2005); *Montrose Chem. Corp. v. Sup. Ct.,* 6 Cal.4th 287, 300 (1993) ("Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor."). Whether there the duty to defend exists is evaluated by "reference to the policy, complaint, and all facts known to the insurer from any source." *Montrose,* 6 Cal.4th at 300.

Arch asserts that Plaintiffs claims fail as a matter of law because there was no potential for coverage in the underlying action. Arch contends that coverage was precluded because (1) the property damage did not occur during the policy period and (2) two policy exclusions apply to bar coverage of the claim. The Court addresses each in turn.

*1. Occurrence of the property damage*

First, Arch argues that there was no potential of coverage because the property damage did not "occur" or "first take place" during the policy period. Specifically,

/ / /

Arch contends that the Arch Policy ended on September 22, 2009, but the property damage did not occur until January 2010.

Plaintiffs argue that January 2010 "is nothing more than the date the Plaintiffs observed appreciable damage to their home or a date of manifestation"—not the date that property damage occurred for coverage purposes. (Opp'n 4.) Plaintiffs argue that the property damage was caused by Hess's negligence during the policy period, but the consequences of that injury did not appear until after the policy expired.

Whether Arch had a potential duty to indemnify Hess depends upon the coverage provisions and exclusions in the Arch Policy. *See Modern Dev. Co. v. Navigators Ins. Co.,* 111 Cal. App. 4th 932, 939 (2003) ("[I]n determining whether allegations in a particular complaint give rise to coverage under a comprehensive general liability [sic] policy, courts must consider both the occurrence language in the policy, and the endorsements or exclusions affecting coverage, if any, included in the policy terms.").

Insurance policies are contracts interpreted in accordance with the general rules of construction applicable to all contracts. *Mount Vernon Fire Ins. Corp. v. Oxnard Hospitality Enter., Inc.*, 219 Cal. App. 4th 876, 882 (2013). The principal tenet of contract interpretation is to effect the parties' intent as expressed in the contract terms. *Id.* (citing *AIU Ins. Co. v. Sup. Ct.*, 51 Cal. 3d 807, 822 (1990)). To that effect, insurance policy terms are given their plain meaning. *Mount Vernon*, 219 Cal. App. 4th at 882; Cal. Civ. Code § 1638. The context in which policy terms appear is also critical. *Id* ("[E]qually important are the requirements of reasonableness and context.") (internal quotation marks omitted).

The Arch Policy, like most third-party-liability-insurance policies,[2] is an occurrence-based policy. The Arch Policy applies to property damage only if "The

---

[2] Third-party liability policies differ from first-party insurance policies in that they assume a contractual duty to pay judgments that the insured becomes legally obligated to pay as damages because of bodily injury or property damage caused by the insured. *See Montrose*, 10 Cal. 4th at 663.

bodily injury or property damage is caused by an occurrence which takes place during the policy period . . . and . . . such occurrence first takes place during the policy period." (ECF No. 12, Ex. A at A-6.) Occurrence is defined in the policy as "an accident, including a continuous or repeated exposure to substantially the same general harmful condition, neither expected nor intended from the standpoint of the insured." (*Id.* at A-21.) The policy provides a standard definition of "property damage," i.e., "physical injury to tangible property, including loss of use of that property". (ECF No. 12, Ex. A at A-21.)

The Arch Policy also contains a first-takes-place limitation. It provides that,

> All bodily injury or property damage arising from an occurrence shall be deemed to first take place at the time of the first such bodily injury or property damage, regardless of the date of manifestation . . . even though the occurrence giving rise to such damage may be continuous or repeated exposure to the same generally harmful conditions, and even though the nature, type [sic] or extent of such bodily injury or property damage may be continuous, progressive, cumulative, changing [sic] or evolving.

(*Id.* at A-7.)

Thus, the plain language of the Arch Policy makes clear that it is an occurrence-based policy that requires both the occurrence and first instance of property damage to take place during the policy period. Thus property damage that occurs—or, in the case of progressive damage, that begins—during the insurers' policy period, but manifests or continues after the period, triggers coverage.

Arch insured Hess from June 5, 2009, through September 22, 2009, in the midst of the construction on Plaintiffs' property. In the underlying action, Plaintiffs alleged that the damage arising out of Hess's negligence occurred "on or after June, [sic] 2007, and "within 5 years of the replacement of the built-up roof and within 2 years of

1 the general construction." (ECF No. 20.) Thus, the Complaint alleges that at least
2 *some* property damage took place during the Arch Policy period. Consequently the
3 first instance of property damage could have taken place during the policy period.
4 Because the Plaintiffs' property damage could have taken place during the policy
5 period, the Court concludes that Plaintiffs have alleged sufficient facts to give rise to
6 the potential for indemnity under the policy.

7 Arch's reliance on the date that the Plaintiffs first noticed the water damage as
8 the first instance of damage is misplaced. The Arch Policy did not limit coverage to
9 the first *manifested* damages. *See St. Paul Mercury Ins. Co v. Mountain W. Farm*
10 *Bureau Mutual Ins. Co.*, 210 Cal. App. 4th 645, 661 (2012) ("Occurrence-based
11 policies will cover injuries that 'occur' during the policy period *even if not discovered*
12 *or manifested until after expiration of the policy period.*") (internal quotation marks
13 omitted) (emphasis in original).

14 Indeed, under similar facts and nearly identical contract terms, courts have
15 found potential coverage that triggered the duty to defend. In *Pepperell v. Scottsdale*
16 *Ins. Co.,* 62 Cal. App. 4th 1045 (1998), the court found a duty to defend arose based
17 on defective design and construction allegations, even though the damages did not
18 manifest until years after the policy period expired. *Id.* at 1055. Like the Arch Policy,
19 the general-liability policy in effect during the construction of the home was
20 occurrence-based. *Id.* at 1048–49. In reaching its conclusion that the insurance
21 company had a duty to defend, the court reasoned, "The clear implication of the
22 complaint is that there existed—at least *potentially—*a covered event, i.e., a continuing
23 and progressively deteriorating process which began with defective design and
24 construction admittedly *within* the pertinent policy." *Id.* (emphasis in original);
25 *accord Century Indem. Co. v. Hearrean*, 98 Cal. App. 4th 734 , 740 (2002); *St. Paul*
26 *Fire & Marine Ins. Co. v. Vadnais Corp.*, Case No. CV F 10-1669 LJO GSA, 2012
27 WL 761664 at*9 (E.D. Cal. Mar. 6, 2012) (finding that the alleged defective design
28 / / /

1 and installation during the policy period "raised the potential for a covered event" even though the damages were discovered later).

    *2. Exclusions*

Arch next argues that even if the Court finds that the Plaintiffs' claim was a covered occurrence, two policy exclusions—j(5) and j(6)—apply to bar coverage of the claim. While the insured has the initial burden of demonstrating a claim falls within the basic coverage scope, "exclusions are narrowly construed and must be proven by the insurer." *Collin v. Am. Empire Ins. Co.,* 21 Cal. App. 4th 787, 802–03 (1994). Ambiguities and reasonable doubts are resolved against the insurer. *Miller v. Elite Ins. Co.,* 100 Cal. App. 3d 739, 751 (1980).

The exclusion found in j(5) applies to works in progress. (ECF No. 12, Ex. A at A-9.) The works-in-progress exclusion provides that Arch is not obligated to indemnify Hess for property damage that occurs while Hess is performing operations on the Property. (*Id.*) The exclusion found in j(6) is a faulty-workmanship exclusion. (ECF No. 12, Ex. A at A-10.) It excludes coverage for the physical injury to, or loss of use of, the part of the Property that must be replaced because Hess's work was performed incorrectly. Both of these exclusions function to bar coverage unless the damage comes within the "products-completed operations hazard" exception. (*Id.*)

The products-completed operations hazard provision in the Arch Policy is designed to cover property damage that occurs after an insured's work is completed. The products-completed operations hazard states that work will be deemed completed, in relevant part, when (1) all the contract work is completed, or (2) the work has been "put to its intended use by any person other than another contractor or subcontractor working on the same project." (ECF No. 12, Ex. A at A-21.) The Arch Policy notes that "Work that may need service, maintenance, correction, repair or replacement after it is completed . . . will be treated as completed even though a contract requires such service, maintenance, correction, repair or replacement." *Id.*

*///*

Arch asserts that because Plaintiffs did not allege that Hess completed its work during the Arch Policy period in the underlying Hess complaint, exclusions j(5) and j(6) preclude coverage for any property damage. Plaintiffs argue that Hess's work was both completed and put to its intended use by Plaintiffs during the policy period. Plaintiffs contend that although the dates that the work was completed and put to its intended were not included in the underlying Hess Complaint, they were easily ascertainable by other facts made available to Arch, including Hess's invoices, the invoice payments, and email correspondence.

Under California law, an insurer's duty to defend is evaluated by "reference to the policy, complaint, and all facts known to the insurer from any source." *Montrose,* 6 Cal. 4th at 300. Accordingly, Plaintiffs can appropriately rely on the Hess invoices, payments, and email correspondence to show that Arch had notice of a potentially covered claim. Arch owed a duty to defend Hess against the underlying complaint if there was even the *potential* for indemnity under the policy. *Scottsdale,* 36 Cal. 4th at 654; *Montrose Chem. Corp.,* 6 Cal.4th at 300. And *any* doubt must have been resolved in Hess's favor. *Montrose Chem. Corp.,* 6 Cal.4th at 300. Consequently, Arch has failed to meet its high burden to prove that there were absolutely no potentially covered claims contained in the underlying Hess Complaint.

**C. Duty of Good Faith**

Arch argues that Plaintiffs' breach-of-good-faith claim should be dismissed because there was no duty to defend Hess in the underlying action. Where "there is no potential for coverage, and hence no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing." *Waller v. Truck Ins. Exch. Inc.*, 11 Cal. 4th 1, 35 (1995). Because Arch has failed to prove that no potential for coverage existed, Plaintiffs sufficiently state a claim for breach of the implied covenant of good faith and fair dealing.

/ / /

/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Arch's Motion to Dismiss. (ECF No. 12.)

**IT IS SO ORDERED.**

June 23, 2014

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**